## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TESSA HAGER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-23-18-AMG** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Tessa Hager ("Plaintiff") brings this action for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB"). (Doc. 1). The Commissioner has filed the Administrative Record ("AR"). (Doc. 7). The parties have briefed their respective positions. (Docs. 9, 15).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 10, 11). Based on the Court's review of the record and issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

## I. The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see also id.* §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of

the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the Plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age, education, and work experience." *Id.*  "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted).  A court's review is based on the administrative record, and a court must "meticulously examine the record as

---

[2] RFC is "the most [a claimant] can do despite [a claimant's] limitations."  20 C.F.R. § 404.1545(a)(1).

a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History

On August 8, 2020, Plaintiff filed an application for DIB, alleging a disability onset date of June 1, 2020.  (AR, at 82).  The SSA denied the application initially and on reconsideration.  (*Id.* at 100, 127).  An administrative hearing was then held on April 28, 2022.  (*Id.* at 37-67).  The Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled.  (*Id.* at 12-36).  The Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-6).  Thus, the ALJ's decision is the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## III.    The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2020, the alleged onset date.  (AR, at 18).  At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of "fibromyalgia, degenerative disc disease, chronic cervicalgia, inflammatory polyarthropathy, pseudo-seizures, major

depressive disorder, generalized anxiety disorder, attention deficit hyperactivity disorder, panic disorder, [and] obsessive compulsive disorder." (*Id.*)  At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the listed impairments. (*Id.* at 19).  The ALJ then determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) with additional limitations.  [Plaintiff] can occasionally climb, balance, stoop, kneel, crouch, and crawl.  [Plaintiff] is to avoid concentrated exposure to hazards, such as unprotected heights and heavy machinery.  [Plaintiff] can understand, remember, and carry out simple, routine, and repetitive tasks.  [Plaintiff] can relate to supervisors and co-workers on a superficial work basis.  [Plaintiff] can have occasional contact with the general public.  [Plaintiff] can adapt to a work situation.  [Plaintiff] can deal with no more than occasional changes in work processes and environment.

(*Id.* at 22).  Then, at Step Four, the ALJ found Plaintiff could not perform any past relevant work. (*Id.* at 27).  At Step Five, however, the ALJ found Plaintiff could perform jobs existing in significant numbers in the national economy.  (*Id.*)  Specifically, the ALJ found that Plaintiff could work as a small products assembler, merchandise marker, or a housekeeper-cleaner. (*Id. at 28*).  Thus, the ALJ found that Claimant had not been under a disability since June 1, 2020. (*Id.* at 29).

## IV.   Issues Presented for Judicial Review

Plaintiff contends that the ALJ erred by failing to properly consider Plaintiff's subjective reports concerning her pseudo-seizures. (Doc. 9, at 6-10).  Plaintiff further asserts the ALJ erred by improperly evaluating the medical opinion of Melissa Troy, A.P.R.N. (*Id.* at 10-15).

**V.     Analysis**

**A.     The ALJ Failed to Conduct an Adequate Consistency Analysis Regarding Plaintiff's Pseudo-Seizures.**

Plaintiff argues that the ALJ erred in the consideration of her subjective reports about her pseudo-seizures.  (Doc. 9, at 6).  The Court agrees.

The ALJ found Plaintiff's pseudo-seizures to be a severe impairment at Step Two of his opinion.  (AR, at 18).  Once a claimant's impairments are deemed severe at Step Two, the ALJ must discuss their impact throughout the remainder of the disability determination. 20 C.F.R. § 404.1545(a)(2).  Indeed, in formulating the RFC at Step Four, the ALJ must discuss the combined effect of all the claimant's medically determinable impairments, both severe and nonsevere.  *See Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013).

When evaluating a claimant's subjective symptoms[3] of her impairments, an ALJ must consider: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions.  *See* Social Security Ruling ("SSR") 16-3p: <u>Titles II & XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017).  The ALJ must determine whether the claimant's "statements about the

---

[3] The SSA defines "symptom" as "the individual's own description or statement of his or her physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2.

intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." *Id.* at *7.  If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id*. at *8.  The ALJ "will explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions.  [The ALJ] will evaluate an individual's symptoms considering all the evidence in his or her record." *Id*.  The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id*. at *9.

The ALJ acknowledged Plaintiff's pseudo-seizures and some related symptoms in a single paragraph of the narrative discussion of Plaintiff's RFC at Step Four:

> The claimant has pseudo-seizures. The claimant reported having seizures, and she reported aura [AR, at 881, 1054].  Her seizures were alleged to occur up to twice a week, and she reported having both tonic-clonic and absence seizures [*id*. at 881].  She was evaluated for a brain tumor, but this was negative [*id*.].  An EEG ruled out epileptic seizures, and a doctor believed these were due to anxiety and diagnosed these as pseudoseizures [*id*. at 1062, 1176, 1334].

(AR, at 23).

In the medical evidence cited by the ALJ, the Plaintiff reported to her medical providers that, during her pseudo-seizures, "she can feel a sensation of shock going through her body," and "she has loss of balance and has difficulty walking," (*id*. at 881); that she "can have multiple spells per day," including one prolonged episode where "she became

confused and staggered [and] she fel[t] weakness in her legs," (*id.* at 1054, 1062); and discussed an incident where she had to pull over while driving because "she started having a convulsion" during which she "was unable to talk and was making weird noises," (*id.* at 1334). The medical evidence also references at least one visit to the emergency room resulting from these episodes. (*Id.* at 881, 1054, 1062).

Significantly, the ALJ did not discuss or even cite to a medical record in which Plaintiff's primary care physician reported witnessing Plaintiff's seizure. (AR, at 1303). The physician stated that Plaintiff

> was grunting, crying and yelling while sitting in a chair. Her body was tensed, and she had her fists clenched in her lap. As I continued to sit beside her and remind her to breathe, she calmed down. She continued to cry without yelling. She was able to speak to me in a normal voice, and apologized for the episode.

(*Id.*) Although "an ALJ is not required to discuss every piece of evidence," he must, "in addition to discussing the evidence supporting his decision, . . . discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir.1996) (internal quotation marks omitted).

The ALJ concluded that

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id*. at 23).  But the ALJ never explained whether or why he found Plaintiff's statements about the effects of her pseudo-seizures to be consistent or inconsistent with the record evidence, nor whether he found her symptoms more or less likely to reduce her capacity to perform work-related activities.  Indeed, the ALJ entirely failed to evaluate whether or not there are any work-related limitations that flow from Plaintiff's severe impairment of pseudo-seizures or how the RFC addresses them or need not.  *See Cavalier v. Colvin*, 2014 WL 7408430, at *2 (N.D. Okla. Dec. 30, 2014) ("The question is not whether the RFC recounts or lists the 'severe' impairments found at step two, but whether the RFC accounts for the work-related limitations that flow from those impairments.").  Because the ALJ's evaluation of Plaintiff's symptoms of her pseudo-seizures was not clearly articulated, the Court "cannot conduct a meaningful review" of the decision, namely whether the RFC is supported by substantial evidence.  *See Brownrigg v. Berryhill*, 688 F.  App'x 542, 546 (10th Cir. 2017) ("Because the ALJ did not apply the correct legal test or sufficiently articulate his reasoning, we cannot conduct a meaningful review of the pain assessment.").  Remand is necessary so that the ALJ can conduct an appropriate symptom analysis and explanation regarding Plaintiff's pseudo-seizures and any relationship to the RFC.[4]

---

[4] *See, e.g., Wireman v. Saul*, 2020 WL 1074911, at *5 (N.D. Ind. Mar. 5, 2020) (finding that "remand is required because the RFC determination does not explain how the ALJ accounted for the frequency and effect of Plaintiff's seizures on Plaintiff's ability to sustain work"); *Delgado v. Colvin*, 2013 WL 2431160, at *13 (N.D. Ind. June 4, 2013) (finding that "[t]he ALJ's central error in assessing Plaintiff's RFC was her failure to reconcile how Plaintiff could maintain employment despite evidence of the frequency of her pseudoseizures" where "[t]he record establishes that the frequency of Plaintiff's pseudoseizures (and related emergency room treatment) is incompatible with full-time employment").

**B.      The Undersigned Does Not Reach the Remaining Issues.**

The analysis on remand may be affected by the ALJ's consideration of Plaintiff's pseudo-seizures.  Thus, the undersigned does address Plaintiff's remaining arguments.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

**VI.     Conclusion**

For the reasons discussed above, the Court **REVERSES** the decision of the Commissioner and **REMANDS** the matter for further development of the record and further proceedings.

ENTERED this 17th day of October, 2023.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE